## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

KEISHA FRIDAY,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,[1]

                    Defendant.

1:20-cv-04504-NLH

**OPINION**

---

**APPEARANCES:**

JENNIFER L. STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 Kenilworth Ave
Cherry Hill, NJ 08002

    *On behalf of Plaintiff*

LAUREN DONNER CHAIT
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the United States Social Security Administration.

Insurance Benefits ("DIB")[2] and Supplemental Security Income ("SSI")[3] under Title II and Title XVI of the Social Security Act.[4]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled as of January 1, 2015.  For the reasons stated below, this Court will reverse that decision and remand the matter for further consideration consistent with this Opinion.

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

[4] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

2

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Keisha Friday,[5] protectively filed[6] an
application for SSI on July 1, 2017 and for DIB on June 16, 2018[7]
alleging that she cannot work[8] because of her impairments of
Sjögren's syndrome, fibromyalgia, systemic lupus erythematosus,
obesity, temporomandibular joint disorder ("TMJ"), migraines,
and anxiety.

After Plaintiff's claim was denied initially and upon
reconsideration, Plaintiff requested a hearing before an ALJ,

---

[5] Plaintiff was 29 years old at the time of the alleged
disability onset date, which is defined as a younger individual
(age 18-49).  20 C.F.R. §§ 404.1563, 416.963.

[6] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

[7] Even though Plaintiff contends that her onset date of
disability is January 1, 2015, the relevant period for
Plaintiff's SSI claim begins with her July 1, 2017 application
date, through the date of the ALJ's decision on September 19,
2019.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI
until, among other factors, the date on which he or she files an
application for SSI benefits); 20 C.F.R. § 416.501 (claimant may
not be paid for SSI for any time period that predates the first
month he or she satisfies the eligibility requirements, which
cannot predate the date on which an application was filed).
This difference between eligibility for SSI and DIB is not
material to the Court's analysis of Plaintiff's appeal.

[8] Even though Plaintiff had worked part-time as a cashier, under
the regulations Plaintiff is considered to have no past relevant
work.  20 C.F.R. §§ 404.1565, 416.965.

which was held on May 23, 2019.  On September 19, 2019, the ALJ
issued an unfavorable decision.  Plaintiff's Request for Review
of Hearing Decision was denied by the Appeals Council on
February 19, 2020, making the ALJ's decision final.  Plaintiff
brings this civil action for review of the Commissioner's
decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold
the Commissioner's factual decisions where they are supported by
"substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3);
Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.
Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,
970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means
more than "a mere scintilla."  Richardson v. Perales, 402 U.S.
389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305
U.S. 197, 229 (1938)).  It means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,

4

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

            Unless the [Commissioner] has analyzed all

>           evidence and has sufficiently explained the
>           weight he has given to obviously probative
>           exhibits, to say that his decision is
>           supported by substantial evidence approaches
>           an abdication of the court's duty to
>           scrutinize the record as a whole to
>           determine whether the conclusions reached
>           are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

6

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[9] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a

_____

[9] Various provisions of the regulations were amended effective March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are relevant to Plaintiff's appeal.

7

continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of Sjögren's syndrome, fibromyalgia, systemic lupus erythematosus, and obesity were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary exertional level,[10] with certain restrictions.  At steps four and five, the ALJ determined that Plaintiff did not have any past relevant work experience, but after hearing testimony from a vocational expert, the ALJ determined that Plaintiff was capable of performing jobs in the national economy, such as document preparer, call out operator, and information clerk.

Plaintiff presents four issues on appeal of the ALJ's decision: (1) Whether the ALJ failed to consider the Plaintiff's medically determinable impairments of temporomandibular joint

---

[10] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

disease (TMJ), anxiety and migraines, and further failed to incorporate limitations consistent with those impairments in her RFC assessment; (2) Whether the ALJ erred in her formulation of the RFC by failing to include any limitations for time off-task or absenteeism; (3) Whether the ALJ erred in her treatment of the medical opinion testimony; and (4) Whether the ALJ erred in her credibility determination of Plaintiff's testimony.

Starting with the first issue, the Court finds that the ALJ erred at step two and in the subsequent RFC determination by failing to consider Plaintiff's TMJ, migraines, and anxiety.[11] "The severity test at step two is a '*de minimis* screening device to dispose of groundless claims.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004) (citation omitted). Thus, typically when an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment at step two is harmless error. Torres v. Commissioner of Social Security, 2018

---

[11] The incomplete analysis of step two and the resulting RFC determination undermines the analysis of steps four and five, because the findings at steps four and five are based in large part on the RFC determination. See 20 C.F.R. § 416.20(b)-(f) ("[T]he Commissioner will consider the claimant's [RFC], age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy."). Because of the ALJ's need to reassess step two and Plaintiff's RFC and the subsequent steps, the Court declines to opine on the other issues raised in Plaintiff's appeal.

WL 1251630, at *5 (D.N.J. 2018) (citing Richardson v. Commissioner of Social Security, 2017 WL 6550482, at *5 (D.N.J. 2017) (citing Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005)).  The error at step two is only harmless, however, where the ALJ has considered the missing medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case.  Id.  This is because the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that the ALJ has not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

In this case, as explained below, it appears to the Court that the ALJ failed entirely to consider Plaintiff's medically determinable impairments of TMJ, migraines, and anxiety at step two and in the RFC determination.  Thus, even if those

impairments could have been properly disregarded at step two as not severe,[12] the Court cannot find the absence of that analysis at step two to be harmless error because the ALJ did not consider those impairments in combination with her severe impairments in formulating Plaintiff's RFC.

The ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can handle items frequently with the left hand, and can handle items frequently with the right hand. She can frequently finger and feel bilaterally. She can occasionally climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch and crawl. She can never work at unprotected heights or with hazardous machinery, and can have no more that moderate exposure to noise.

(R. at 13.)

In the ALJ's decision, she stated, "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 14.)  The ALJ concluded, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected

---

[12] An "impairment is not severe if medical evidence establishes that the condition has no more than a minimal impact on the individual's ability to engage in basic work activities."  Page v. Barnhart, 108 F. App'x 735, 738 (3d Cir. 2004).

to cause the alleged symptoms; however, the claimant's
statements concerning the intensity, persistence and limiting
effects of these symptoms are not entirely consistent with the
medical evidence and other evidence in the record for the
reasons explained in this decision."  (R. at 14.)

With regard to Plaintiff's medically determinable
impairments that the ALJ stated she considered, the ALJ
discussed Plaintiff's severe impairments of Sjögren's syndrome,
fibromyalgia, lupus, and obesity.  (R. at 15-16.)  For
Plaintiff's other impairments of migraines, headaches, and
anxiety, the ALJ's decision mentions the word "migraine" once
and the word "headache" once, and it fails to mention at all
"anxiety" or "temporomandibular joint disease/TMJ."

As to Plaintiff's migraines, the ALJ recounted a treatment
note from July 13, 2017, when Plaintiff was diagnosed with
Sjögren's syndrome: "She reported increasing bruising and some
bleeding, as well as fatigue, dizziness, migraines, and flank
pain (Exhibit 7F)."  (R. at 15.)  For the related impairment of
headaches, the ALJ recounted a treatment note from a January 23,
2019 office visit for Plaintiff's lupus:  "She is noted by Dr.
Weeks to have a mild version of this disease, with a positive
dsDNA, arthralgias, rashes, fatigue and headache. (Exhibit
10F)."  (R. at 15.)

Beyond these two references, Plaintiff's medical records

and her testimony reveal a long and detailed history of migraines and headaches, including the diagnosis of TMJ which causes migraines and headaches, that predate her alleged onset date of January 1, 2015, as well as the eventual diagnoses of Sjögren's syndrome and lupus.[13]  Defendant recognizes this in her brief, citing to a string of evidence: "Throughout the relevant record, Plaintiff complained of headaches and migraines either present or through references to her past history (Tr. 305-08, 311, 314, 317, 319, 322, 326, 336, 339, 342, 345, 356, 371-74, 372, 378, 383, 389-90, 430, 460, 465, 474, 498, 504, 524, 534-35, 580, 582, 589, 707, 743-74, 774, 799)," and "Plaintiff complained of headaches stemming from TMJ."  (Docket No. 13 at 9.)

Defendant cites this evidence and other records to show that even though Plaintiff suffered from migraines and headaches, medication, mostly over-the-counter, often helped her headaches, and that on several occasions over the years

---

[13] Defendant points out that Plaintiff's Sjögren's syndrome and lupus were not diagnosed until years after her alleged disability onset date.  In this case, the Court does not find relevant the date of Plaintiff's particular diagnoses because the alleged disabling symptoms of those impairments, although not yet specifically named, were occurring as of the alleged disability onset date.  See, e.g., Gunn v. Commissioner of Social Security, 2017 WL 4786558, at *6 (D.N.J. 2017) ("It is not the name of a specific diagnosis that is relevant to the disability determination, but rather how a person's symptoms affect a person's ability to work.").

Plaintiff had not complained of migraines or headaches at a
particular medical visit.  Based on this evidence, Defendant
argues that the ALJ properly considered these impairments as not
severe at step two.  Defendant further argues that ALJ accounted
for these "not severe" impairments when the ALJ said she "has
considered all symptoms."  Finally, Defendant argues that the
ALJ incorporated Plaintiff's headaches in the RFC determination
"while discussing the generally normal examination findings and
appropriately limited Plaintiff to no 'work at unprotected
heights or with hazardous machinery, and can have no more that
moderate exposure to noise.'"

Defendant attempts cannot substitute its analysis for the
analysis that should have been undertaken explicitly by the ALJ.
The record is clear that Plaintiff suffered from the medically
determinable impairments of migraines, headaches, and TMJ.[14]  Yet

---

[14] See Fitzpatrick v. Commissioner of Social Security, 2020 WL
1872978, at *5 (D.N.J. 2020) (citing 20 C.F.R. § 404.1529; POMS,
DI 25205.005 Evidence of a Medically Determinable Impairment ("A
medically determinable physical or mental impairment must result
from anatomical, physiological, or psychological abnormalities
which can be shown by medically acceptable clinical and
laboratory diagnostic techniques.  The impairment must be
established by objective medical evidence (signs, laboratory
findings, or both) from an acceptable medical source, not on an
individual's statement of symptoms."); cf. Ungemach v.
Commissioner of Social Security, 2019 WL 3024858, at *6-7
(D.N.J. 2019) (finding that the ALJ did not improperly fail to
consider Plaintiff's migraines in the RFC analysis because they
were not a medically determinable impairment, explaining, "Other
than Plaintiff's self-reporting that she experiences migraines,
which her physicians have recorded in their records, Plaintiff

the ALJ did not specifically discuss these impairments to explain, as Defendant contends, that those impairments did not have the requisite "significant impact" on Plaintiff's ability to work such that they did not need to be accounted for at step two.[15]  The ALJ also failed to otherwise account for these impairments as non-severe in the RFC, and it is an impermissible stretch to find that a noise restriction in the RFC was a direct accommodation for Plaintiff's migraines, headaches, and TMJ. This Court cannot incorporate Defendant's analysis to fill in the blanks of the ALJ's decision.  See Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000) (explaining that the Commissioner cannot recharacterize evidence "in an effort to make sense of the ALJ's decision").  Additionally, the Court cannot independently determine whether Plaintiff's migraines,

---

does not cite to one medical record that reveals any office visit specific to her migraines, or documents how her migraine headaches impact her functioning.  The ALJ cannot be faulted for not considering Plaintiff's migraine headaches in the RFC assessment because the only record of Plaintiff's migraines is Plaintiff's conclusory statement that she experiences them.") (citing Hatton v. Commissioner of Social Security Admin., 131 F. App'x 877, 879 (3d Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2)) ("[A] medical source's recitation of subjective complaints is not entitled to any weight.")).  Here, the impairments ignored by the ALJ are well-documented in the record evidence.

[15] An impairment is "severe" under the regulations only if it "significantly" limits a claimant's mental or physical ability to do basic work activities.  20 C.F.R. § 404.1520(c).

headaches, and TMJ are severe or not severe at step two, and the Court cannot redo the RFC determination.  See Williams, 970 F.2d at 1182 (explaining that in terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder").

Finally, if the Court were to accept that the ALJ properly assessed Plaintiff's migraines, headaches, and TMJ solely upon her conclusory, catch-all statement that she "considered all symptoms,"[16] the Court would abdicate its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational."  Gober, 574 F.2d at 776; Cotter v. Harris, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

With regard to Plaintiff's anxiety, which is not mentioned in the ALJ's decision, Defendant recognizes that Plaintiff suffers from anxiety and it is a medically determinable impairment.  Defendant recounts an April 26, 2019 medical source statement by Plaintiff's treating physician, Jacqueline Rounds,

---

[16] This statement appears to be stock language contained in every decision issued by the ALJs in social security cases.

17

D.O., which stated Plaintiff was likely to have good days and bad days based on somatoform disorder and anxiety.  (R. at 543.) Like Plaintiff's migraines, headaches, and TMJ, the ALJ failed to address expressly Plaintiff's anxiety at step two or in the RFC analysis.  Although Plaintiff's anxiety may not be considered severe at step two and may not have an impact on the ultimate RFC determination,[17] the ALJ must explain why so that this Court may perform a meaningful review of the ALJ's decision to determine if it is supported by substantial evidence.  <u>Gober</u>, 574 F.2d at 776; <u>Cotter</u>, 642 F.2d at 706-07.

In sum, because the ALJ failed to consider Plaintiff's medically determinable impairments of migraines, headaches, TMJ, and anxiety at step two and in the RFC determination as required under the governing regulations, the Court cannot find that the ALJ's decision is supported by substantial evidence.  The matter

---

[17] Defendant's brief does not provide a substantive response to Plaintiff's argument that the ALJ failed to properly consider her anxiety at step two, which requires a Paragraph B assessment.  <u>See</u> <u>Marrollo v. Commissioner of Social Security</u>, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.")  On remand, the ALJ must perform a Paragraph B analysis, or explain why such analysis is not necessary.

must be remanded to the ALJ so that the ALJ may properly perform the step two analysis and the subsequent steps in the sequential step analysis, including a revised assessment of Plaintiff's RFC.[18]

### III. Conclusion

For the reasons expressed above, the decision of the ALJ is not supported by substantial evidence and must be reversed.  The matter shall be remanded for further consideration consistent with this Opinion.  The Court expresses no view as to whether, after a full review and explanation of the record evidence, Plaintiff should be found disabled or not under the applicable regulations.

An accompanying Order will be issued.


Date: August 31, 2021                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

[18] When an ALJ has failed to apply the correct legal standards and her conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991) (providing that under Sentence Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").  The SSA is in a better position than this Court to reassess step two, Plaintiff's RFC, and the remaining steps in the sequential step analysis.